UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE WELLS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 15-cv-01700-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 19 |

Currently before the Court is defendants' motion to dismiss the First Amended Complaint. Dkt. No. 19. This matter came on for hearing on August 21, 2015. For the reasons set forth below, the Court GRANTS in part and DENIES in part defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs are seven individuals who are or were employed with the Lawrence Berkeley National Laboratory ("the Lab"), which is managed by defendant Regents of the University of California. First Amended Complaint ("FAC") ¶¶ 1-2. They allege that the Lab and its managers, in response to pressures to decrease the Regents' liability for employee pensions, devised and implemented a scheme of forcing older employees out of their jobs. In the FAC, Plaintiffs assert twelve causes of action, which include state and federal claims alleging discrimination, retaliation, and harassment on the basis of age, race, and disability, along with several tort claims. Plaintiffs seek general and special damages against all defendants, punitive damages against the three individual defendants, and attorneys' fees and costs.

Plaintiffs allege that in recent years while the University of California was experiencing budget problems, the Lab hired Kim Williams to head the Office of the CFO for Procurement and

1  Property. *Id*. ¶ 13. The complaint describes how Williams and her direct report, defendant Becky
2  Cornett, "devised a plan to reduce the number of older employees, and vesting employees, in the
3  department." *Id*. Defendants Diane Hutchinson and Edna Annis, who reported to defendant
4  Cornett, assisted in this plan. *See id*. ¶¶ 16. They allegedly overloaded older employees with
5  work, refused to provide them with training, gave negative performance reviews, failed to extend
6  permanent offers to older employees when their probationary periods ended, and generally were
7  derogatory to the targeted employees. *See, e.g., id.* ¶¶ 13, 19. All of this was allegedly done in an
8  effort to force older employees to resign, thus reducing the Lab's pension liability.

9  Five of the seven plaintiffs are over the age of forty and claim to have been directly
10 targeted by these actions. The two remaining plaintiffs, Richard Kemp and Brandon Craig, held
11 managerial roles and resigned after refusing to comply with the force-out plan that defendants
12 created. *Id*. ¶¶ 20, 78, 82. Of the plaintiffs, only Lisa Cordova still works for the Lab. *See*
13 Opposition at 1. All of the plaintiffs bring claims related to age discrimination, harassment, and
14 retaliation. Plaintiff Lorraine Wells also brings claims related to race and disability.

15 Plaintiffs originally filed this case in Alameda County Superior Court. Defendants
16 removed the case on April 15, 2015. Dkt. No. 1. The case was originally assigned to Judge
17 Thelton E. Henderson. Defendants filed a motion to dismiss on April 22, 2015. Dkt. No. 5. On
18 May 26, 2015, Judge Henderson issued an order of recusal and the case was reassigned to this
19 Court the following day. Dkt. Nos. 11, 12. On June 5, 2015, plaintiffs filed the FAC. Dkt. No.
20 16. The parties then filed a stipulation, which this Court ordered, in which defendants withdrew
21 their motion to dismiss the complaint and agreed to the filing of the FAC. Dkt. No. 18. On June
22 26, 2015, defendants filed the present motion to dismiss the FAC based on failure to state a claim.
23 Dkt. No. 19.

## LEGAL STANDARD

26 Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
27 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
28 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

2

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Claims under FEHA

Plaintiffs bring several causes of action for age and race discrimination and harassment under California's Fair Employment and Housing Act ("FEHA"). California's FEHA makes it unlawful for an employer to discriminate on the basis of race, disability, or age with respect to an employee's compensation or in the terms, conditions, or privileges of employment. Cal. Gov't Code § 12940(a). FEHA also protects employees from harassment related to race, disability, or age. *Id.* § 12940(j).

To pursue a claim for violations of FEHA in court, a plaintiff must first exhaust administrative remedies. *Rodriguez v. Airborne Express,* 265 F.3d 890, 896 (9th Cir. 2001). FEHA imposes a duty upon plaintiffs to file a written charge of discrimination with the California

3

1    Department of Fair Employment and Housing ("DFEH") within one year of the alleged violation
2    and to obtain notice of the right to sue from the Department. *Id.*; Cal. Gov't Code § 12960(d).
3    Upon receiving a right to sue letter, a plaintiff has one year to file his or her FEHA claim in a
4    judicial forum. Cal. Gov't Code § 12965(b). The plaintiff bears the "burden to plead and prove
5    timely exhaustion of administrative remedies, such as filing a sufficient complaint with [DFEH]
6    and obtaining a right-to-sue-letter" prior to filing a claim under FEHA in court. *Kim v. Konad
7    USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (citing *Garcia v. Los Banos Unified
8    School Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)).

9    Defendants have moved to dismiss plaintiffs' claims under FEHA for failure to allege
10   exhaustion of administrative remedies. Motion at 7. Plaintiffs dispute that they are required to
11   plead administrative exhaustion, but state that even if it were required they could amend their
12   pleadings to insert one sentence alleging administrative exhaustion on behalf of five plaintiffs.
13   Opposition at 4. Counsel is waiting for confirmation of administrative exhaustion as to plaintiffs
14   Ron Harpole and Andrea Tung. *See id.*

15   Because it is plaintiffs' burden to plead administrative exhaustion, the Court dismisses
16   Claims One, Two, Four, and Five with leave to amend.[1] When amending, plaintiffs are reminded
17   that their allegations "may not simply recite the elements of a cause of action, but must contain
18   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to
19   defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir.
20   2012). Plaintiffs shall put forth sufficient allegations regarding administrative exhaustion to meet
21   the pleading standard.

**II.    Federal Claims under Sections 1981, 1983, 1985**

Defendants next move to dismiss plaintiffs' federal claims. Wells brings claims for race discrimination and harassment against Hutchinson and Cornett (Claims Seven, Eight, and Nine).

---

[1] Defendants have also moved to dismiss plaintiffs' retaliation claims (Claims Three and Six) based on failure to exhaust under FEHA. These claims are addressed separately in Section III, *infra*.

4

All plaintiffs sue the individual defendants for retaliation in violation of the First Amendment (Claim Eleven). Defendants argue that these claims fail as a matter of law because the individual defendants are state public officials and therefore are not subject to suit under 42 U.S.C. §§ 1981, 1983, and 1985.

### A.     Liability in Individual Capacity

Plaintiffs do not dispute that claims under these federal statutes may not be brought against states and state officials in their official capacities. Rather, plaintiffs clarify that they are suing Hutchinson, Cornett, and Annis in their individual capacities only. Opposition at 10, 15. Because plaintiffs have conceded that they are not suing defendants in their official capacities, the Court need not dismiss the federal claims on this ground. Still, in amending the complaint, Plaintiffs should amend to clarify that they are suing the three individuals in their individual capacities.

### B.     Claim under Section 1983

Claim Eight, brought under 42 U.S.C. § 1983, will be dismissed with leave to amend. Defendants argue that Wells's disability-related claims under Section 1983 fail as a matter of law, and Wells concedes that she included the term "disability" in this cause of action in error. Motion at 11; Opposition at 11.

In the FAC, Wells also fails to specify on which federal statute or constitutional provision she bases her claim. She states that her 1983 claim "includes the Fourteenth Amendment's right to equal protection," but she does not confirm that this is the constitutional right she seeks to enforce. The FAC earlier states that plaintiffs "have claims under the 5th and 14th Amendments for deprivation of procedural due process . . . ." Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted). Wells's claim is therefore dismissed with leave to amend to specify exactly which federal right she seeks to vindicate.

5

### C. First Amendment Claim

As defendants point out, the FAC does not specify whether plaintiffs' First Amendment retaliation claims are brought under Section 1983; however, in their opposition plaintiffs confirm that they are bringing their First Amendment claim pursuant to the authority of 42 U.S.C. § 1983. Opposition at 15. Because both parties appear to understand the source of the cause of action, the Court will construe the claim as having been brought under Section 1983 in the first instance.

Defendants also challenge the First Amendment claim on the grounds that plaintiffs have not pled all of the required elements. Motion at 16-17. The First Amendment protects public employees from retaliation in certain circumstances. In evaluating a plaintiff's claim, courts must ask:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff must satisfy all five factors to succeed on a First Amendment retaliation claim. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013).

#### 1. Public Concern

Defendants argue that plaintiffs cannot meet the first factor because the issues they spoke on were not matters of public concern. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Eng*, 552 F.3d at 1070 (citations omitted). However, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id*. (internal quotation marks omitted). This factor is purely a question of law. *Id*. Although the Ninth Circuit has resisted laying out an exact definition of what constitutes a matter of public concern, "the essential question is whether the speech addressed matters of 'public' as opposed to

6

1 'personal' interest." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009)
2 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). With regard to personnel matters, speech
3 may be of public concern where a plaintiff spoke out on behalf of another employee rather than on
4 personnel issues affecting the plaintiff him or herself. *See, e.g., Thomas v. City of Beaverton*, 379
5 F.3d 802, 808 (9th Cir. 2004).

6 Here, plaintiffs Craig, Kemp, and Tung have alleged facts that meet the public concern
7 test. They allege that, in their roles overseeing staff, they were asked to implement the
8 discriminatory plans of the defendants and refused to do so, making their disagreement known.
9 FAC ¶¶ 16-17, 24-28, 63, 78-80. Their vocal opposition to the discrimination against older
10 employees in the office, which "did not pertain to [their] own job status . . . is the type of
11 personnel matter that can be constitutionally protected under the public concern test." *See*
12 *Thomas*, 379 F.3d at 808. Plaintiff Wells, by contrast, "complained to Human Resources about
13 the unfair treatment *she* was experiencing." FAC ¶ 39 (emphasis added). Her speech therefore
14 does not constitute a matter of public concern. *See Thomas*, 379 F.3d at 808. Plaintiffs Cordova,
15 Harpole, and McNeil do not allege any facts to show that they spoke out in any way, whether
16 regarding private or public matters. Wells, Cordova, Harpole, and McNeil have therefore failed to
17 plead that they spoke out on a matter of public concern.

### 2. Adverse Employment Action

Defendants also argue that plaintiffs Kemp and Craig have failed to make out retaliation claims because they voluntarily resigned and therefore did not suffer an "adverse employment action."[2] Motion at 17; Reply at 7. This is not the state of the law in the Ninth Circuit. "In a First Amendment retaliation case, an adverse employment action is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech." *Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003). The Ninth Circuit, along with other circuits including the Eleventh, "take[s] an expansive view of the type of actions that can be considered adverse

---

[2] Defendants raise this argument as to Craig for the first time in their reply. Nevertheless, the Court will address Craig's claim because defendants' argument fails as to him.

employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (evaluating a Title VII claim). "[I]f an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." *Akins v. Fulton Cty.*, 420 F.3d 1293, 1300 (11th Cir. 2005). The Ninth Circuit has found that "lateral transfers, unfavorable job references, and changes in work schedules" all qualify. *Ray*, 217 F.3d at 1243.

Plaintiff Craig alleges that "Cornett refused to properly classify [his] position as an F28.2 Lead Manager, for which he would earn more money." FAC ¶ 80. This is clearly an adverse employment action. The fact that he resigned is not determinative, and the Court will not dismiss the First Amendment claim as to him.

Plaintiff Kemp, however, has failed to allege facts demonstrating he suffered an adverse employment action. Kemp complains that he "experienced the evil looks, cold shoulder, and an overall icy environment . . . ." *Id*. ¶ 29. He states that his colleagues "stopped accepting his feedback, . . . stopped coming to his office to speak with him, . . . had meetings without him, and . . . made him feel unwanted and like he was no longer a part of the management team." *Id*. ¶ 30. Although understandably upsetting, these incidents do not constitute an adverse employment action because they did not negatively affect Kemp's salary, title, position, or job duties. *See Akins*, 420 F.3d at 1300.

Because a plaintiff must meet all five factors that the Ninth Circuit has articulated to make out a claim of First Amendment retaliation, the Court dismisses with leave to amend Claim Eleven as to all plaintiffs, except Tung and Craig.

### III.    Additional Retaliation Claims

In addition to the retaliation claim under the First Amendment, plaintiffs bring two other claims for retaliation (Claims Three and Six). These claims lack the specificity required to put defendants on notice of the charges against them and "to enable the opposing party to defend itself effectively." *See AE*, 666 F.3d at 637. Claims Three and Six assert claims for "Retaliation" but fail to say under what theory. It is unclear whether plaintiffs bring their claims under the common law tort of retaliatory discharge, under FEHA, or under another source. Defendants construe these

8

1 claims as coming under FEHA, and move to dismiss for failure to allege exhaustion of
2 administrative remedies. Motion at 7. The Court dismisses the claims because, as pled, they do
3 not state a claim for which relief can be granted. Plaintiffs will be allowed to amend to state under
4 which retaliation theory they are suing and, if under FEHA, plaintiffs should amend to allege
5 administrative exhaustion, as discussed above.

## IV. Tort Claims

Finally, defendants seek to dismiss plaintiffs' claims for negligent training and supervision and for intentional infliction of emotional distress (Claims Ten and Twelve). Motion at 12. Defendants assert that they are immune under the California Tort Claims Act, Government Code sections 815 and 820.2. *See id.* Additionally, they argue that plaintiffs have failed to allege sufficient facts to satisfy the necessary elements for these torts. *See id.* at 13-15.

### A. Negligent Training and Supervision

In Claim Ten, all plaintiffs bring a claim of negligent training and supervision against "the Lab." FAC ¶ 132. At the hearing, plaintiffs clarified that they bring this claim against defendant Regents of the University of California.

Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006). "A plaintiff alleging negligent training under California law must show that the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009) (citing *State Farm Fire & Casualty Co. v. Keenan,* 171 Cal. App. 3d 1, 23 (1985)).

A public entity, however, which state law defines to include the Regents, is generally not

9

liable in tort except as authorized by statute.[3]  *See* Cal. Gov't Code §§ 811.2, 815; *see also AE*, 666 F.3d at 638.  One such statute allows a plaintiff to hold a public entity vicariously liable for the actions of its employee, unless the employee is also immune.  *See* Cal. Gov't Code § 815.2; *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 868 (2012).

Here, plaintiffs have failed to cite any statutory authority that would make the Regents directly liable for negligent training and supervision.[4]  Rather, they urge the Court to hold the Regents liable under Government Code section 815.2 by applying the reasoning of *C.A. v. William S. Hart Union High School District*.  *See* Opposition at 13-15.  In that case, the California Supreme Court found that a school district may be vicariously liable under Government Code section 815.2 for the negligent supervision of its administrators despite the restrictions of the California Tort Claims Act.  *See C.A.*, 53 Cal. 4th at 865-66.  The decision in that case rested on the "protective duty of ordinary care" that school districts owe their students.  *See id.* at 865, 877 ("Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2 . . . .").  Plaintiffs have failed to cite to any cases finding a similar special relationship in the employment context.  The Court declines to extend the reasoning of *C.A.* here.  As such, Claim Ten, as alleged against the Regents, is dismissed without leave to amend.

### B.     Intentional Infliction of Emotional Distress

As to plaintiffs' intentional infliction of emotional distress ("IIED") claims, which all plaintiffs assert against all defendants, defendants claim immunity under the California Tort

---

[3] Defendants have also filed a request for judicial notice, asking that the Court take judicial notice that the Regents is a public entity created pursuant to Article IX, section 9 of the California Constitution.  Dkt. No. 20.  The Court grants the request for judicial notice.

[4] Contrary to plaintiffs' urging, the FEHA statutes do not create the statutory authority for the Regents' liability in tort.  FEHA waives public entity immunity for claims made under the FEHA, not for all types of damages claims, as plaintiffs here seem to suggest.  *See DeJung v. Superior Court*, 169 Cal. App. 4th 533, 546 (2008) ("FEHA's definition of 'employer' constitutes an express declaration of the Legislature's intent to subject public entities to liability *for violations of FEHA* . . . .") (emphasis added).

Claims Act. They also argue that the FAC lacks sufficient allegations of extreme and outrageous conduct and of plaintiffs' suffering severe emotional distress.

### 1.  Immunity

As noted above, public entities in California are immune from tort claims except as authorized by statute or through the vicarious liability of their employees. *See* Cal. Gov't Code §§ 815, 815.2. Public employees are immune from claims in tort where the act or omission complained of "was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *Id.* § 820.2. Plaintiffs have not identified any viable statutory authority to hold defendant Regents directly liable for their IIED claims. Thus, the Regents' immunity depends on whether the individual defendants are immune.

The individual defendants claim that they are immune because the acts complained of were discretionary. *See* Motion at 12-13 (citing Cal. Gov't Code § 820.2). In determining whether an act is discretionary, California courts distinguish "between 'planning' and 'operational' functions of government. . . . Immunity is reserved for those *basic policy decisions* which have . . . been expressly committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (citing *Johnson v. California*, 69 Cal. 2d 782, 793-94 (1968)) (internal brackets and quotation marks omitted).

Defendants rely on *Caldwell*, in which the California Supreme Court held that school board members were immune from liability stemming from their termination of a school superintendent for discriminatory and retaliatory reasons. *See Caldwell*, 10 Cal. 4th at 976-977, 989. There, however, the court relied on the importance of a school superintendent, "the [school] district's foremost appointed official" who occupies a "crucial post" which has "fundamental policy implications." *See id.* at 983. The court also relied in part on "a state statute [that] gave the school board authority over the superintendent's employment," indicating that the decision was "expressly entrusted to a coordinate branch of government at its highest level." *McQuirk v. Donnelley*, 189 F.3d 793, 800 (9th Cir. 1999) (citing *Caldwell*, 10 Cal. 4th at 982) (internal quotation marks omitted).

11

The parties here have not pointed to similar governing statutes, and the plaintiff Lab employees do not hold the same high-level positions of authority as the school superintendent in *Caldwell*. Rather, defendants' decisions regarding who should receive training and how much, and who should receive work and how much, are ministerial decisions in which defendants were simply carrying out the day-to-day operations of their government. *See Taylor v. Los Angeles Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1239 (2006) ("The decisions regarding job assignments, training and promotion may not be characterized as a quasi-legislative policy-making [decision which] is sufficiently sensitive . . . to call for judicial abstention from interference that might . . . affect the . . . decision-making process of a coordinate branch of government.") (internal quotation marks omitted), *disapproved on other grounds by Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158 (2008).

The individual defendants here do not enjoy discretionary immunity. They may be liable for their torts, and defendant Regents may likewise be vicariously liable. *See* Cal. Gov't Code §§ 815.2, 820.

### 2. Sufficiency of Allegations

Alternatively, defendants argue that the FAC lacks sufficient allegations to meet the elements of an IIED claim. Motion at 14-15.

To prevail on an IIED claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law). The Ninth Circuit defines "outrageous conduct" as conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (citation and internal quotation marks omitted). "[M]ere insulting language" will not typically suffice for outrageous conduct. *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (citation and quotation marks omitted). "Whether a defendant's conduct can reasonably be

12

found to be outrageous is a question of law that must initially be determined by the court . . . ." *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007).

Defendants are entitled to dismissal because the FAC lacks factual allegations of extreme and outrageous conduct. The FAC cites only one direct quote made by a defendant to a plaintiff. This involved defendant Hutchinson telling Harpole that defendant Cornett wanted her to tell him to "button the top button of his shirt everyday and shut up!" FAC ¶ 58. This admonishment, though rude and somewhat perplexing, will not support a claim for IIED. Other allegations are too vague and generalized to be described as exceeding all bounds that a civilized community will usually tolerate. Wells states that defendants "spoke to her in a condescending tone, made her feel disliked and worthless, nitpicked her work and offered unfair and inconsistent criticism . . . ." *Id.* ¶ 41. Cordova complains that defendant Hutchinson "would harp on small areas for improvement and completely minimize all of the positive feedback and achievements" she received from others. *Id.* ¶ 74. Other plaintiffs, such as Tung and McNeil, do not allege any conduct that could be interpreted as supporting their IIED claims.

Plaintiffs' IIED claims (Claim Twelve) are dismissed with leave to amend. Plaintiffs shall add allegations supporting the required IIED elements, if they are able to make such allegations.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss, with leave to amend, as to Claims One through Six, Eight, Eleven except as to Craig and Tung, and Twelve. The Court GRANTS the motion to dismiss Claim Ten without leave to amend. The Court DENIES the motion to dismiss Claims Seven, Nine, and Eleven as to Craig and Tung.

Any amended complaint must be filed on or before **September 18, 2015.**

**IT IS SO ORDERED**.

Dated: September 1, 2015

_____
SUSAN ILLSTON
United States District Judge

13